**BROWN & WINTERS**
William D. Brown (Bar No.125468)
Wentzelee Botha (Bar No. 207029)
120 Birmingham Drive, Suite 110
Cardiff-by-the-Sea, CA 92007
Telephone: (760) 633-4485

**JACKSON GILMOUR & DOBBS, PC**
William J. Jackson (Pending Admission Pro Hac Vice)
Texas Bar No. 00784325
Micheal W. Dobbs (Pending Admission Pro Hac Vice)
Texas Bar No. 24012533
515 Post Oak Blvd., Suite 900
Houston, Texas 77027
Telephone: 713-355-5000

**SAN DIEGO UNIFIED PORT DISTRICT**
**OFFICE OF THE GENERAL COUNSEL**
Thomas A. Russell, SBN 108607, Gen. Counsel
Ellen F. Gross, SBN 149127, Asst. Gen. Counsel
John N. Carter, SBN 246886, Dep. Gen. Counsel
3165 Pacific Highway
P.O. Box 120488
San Diego, CA 92112-0488
Telephone: 619-686-6219

*Attorneys for Plaintiff San Diego Unified Port District*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO UNIFIED PORT DISTRICT, <br><br> Plaintiff, <br><br> v. <br><br> LOCKHEED MARTIN CORPORATION and LOCKHEED MARTIN ENGINEERING & SCIENCES COMPANY, <br><br> Defendants. | Case No.: '16 CV 2026 L   KSC <br><br> **ORIGINAL COMPLAINT OF PLAINTIFF SAN DIEGO UNIFIED PORT DISTRICT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, SAN DIEGO UNIFIED PORT DISTRICT ("the Port District"), hereby alleges as follows:

## STATEMENT OF THE CASE

1.   The Port District is a trustee for tidelands and submerged lands in and around San Diego Bay.  The Port District leased or granted access to certain tidelands

1

and submerged lands at the west end of the East Basin of Harbor Island ("East Basin") of San Diego Bay to Defendants Lockheed Martin Corporation and Lockheed Martin Engineering & Sciences Company (collectively "Lockheed"). Lockheed has failed to fulfill its obligations under the lease and permits and has contaminated lands and other resources the Port District holds in trust for the people of the state of California. Among other things, the lease and permits require Lockheed to remove all improvements constructed on the properties and return the properties to their pre-existing conditions. The original terms of the lease and permits have expired and Lockheed has failed to remove its improvements and waste and return the properties to their pre-existing conditions. In addition to a breach of the lease and permits, the improvements and waste left in place constitute a purpresture, trespass and public nuisance.

2. During Lockheed's occupancy and use of the tidelands and submerged lands, Lockheed caused the releases of hazardous substances onto lands the Port District holds in trust for the people of the state of California. Portions of these lands are contaminated with hazardous substances requiring remediation. The releases of hazardous substances are in violation of CERCLA and California law and have created an unlawful public nuisance. Additionally, as a result, the California Regional Water Quality Control Board, San Diego Region, ("Regional Water Board") has directed Lockheed to investigate the contamination and has indicated that it intends to issue a Cleanup and Abatement Order regarding the property in the near future. Under the various leases and permits, Lockheed is required to indemnify and hold the Port District harmless. The Port District has incurred costs in investigating and abating Lockheed's contamination of the tidelands and submerged lands. Lockheed must indemnify and hold the Port District harmless for its costs, and Lockheed must abate the purpresture and public nuisance it has caused.

ORIGINAL COMPLAINT OF PLAINTIFF SAN DIEGO UNIFIED PORT DISTRICT

**PARTIES**

3.     The Port District is a public entity created by the San Diego Unified Port District Act (California Harbors & Navigation Code, Appendix 1, § 1 *et seq.*) enacted by the California Legislature in 1962 ("the Port Act").  The Port District is a trustee for the people of the state of California, holding and managing the property within its jurisdiction, including the East Basin, "for the development, operation, maintenance, control, regulation, and management of the harbor District ... for the promotion of commerce, navigation, fisheries, and recreation therein." Harb. & Nav. Code App. 1, §§ 2, 4, 5, 5.5.  The Port District is specifically authorized to use its "powers and authority ... to protect and enhance ... physical access to the bay ... natural resources of the bay, including plant and animal life ... [and] quality of water in the bay." *Id.* at § 4. These environmental stewardship powers include the ability to identify, control, dispose of, or abate hazardous wastes on the Port District property. *Id.* at §§ 4, 5.  The Port District holds and exercises this broad land management authority over tidelands and submerged lands in and around San Diego Bay, is the successor to the powers vested in the cities that make up the Unified Port District, and the powers of those cities related to these properties are vested in the Port District. *Id.* at §§ 5, 70.

4.     Defendant Lockheed Martin Corporation is, and at all times relevant herein was, a corporation organized and existing under the laws of the State of Maryland with its principal place of business in Bethesda, Maryland.  Lockheed Martin Corporation is the successor to Lockheed Missiles & Space Company and Lockheed Aircraft Corporation.  Lockheed Martin Corporation may be served with process through its registered agent in California, CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833.

5.     Defendant Lockheed Martin Engineering & Sciences Company f/k/a Lockheed Engineering & Sciences Company is, and at all times relevant herein was, a corporation organized and existing under the laws of the State of Texas with its principal place of business in Gaithersburg, Maryland.  Lockheed Martin Engineering

ORIGINAL COMPLAINT OF PLAINTIFF SAN DIEGO UNIFIED PORT DISTRICT

& Sciences Company may be served with process through its registered agent in California, CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833.

## JURISDICTION AND VENUE

6.   This Court has jurisdiction over Plaintiff's federal cause of action under 28 U.S.C. § 1331 and 42 U.S.C.A. § 9607 without regard to the amount in controversy. This Court also has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

7.   Jurisdiction is also proper in this Court under 28 U.S.C. § 1367 (supplemental jurisdiction), 28 U.S.C. § 2201 (declaratory relief), and 28 U.S.C. § 2202 (injunctive relief).

8.   Venue is appropriate in this judicial district under 28 U.S.C. § 1391(a) because the property that is the subject of the action is situated in this judicial district.

## BACKGROUND FACTS

### *Tidelands and Submerged Lands Leased to Lockheed*

9.   As described more fully below, Lockheed leased or was licensed the tidelands and submerged lands located at the western end of the East Basin.  These properties include the Marine Terminal Railway Facility and adjacent LESC Facility.

*Marine Terminal Railway Facility*

10.   Beginning April 1, 1966, Lockheed Aircraft Corporation leased and permitted certain tidelands and submerged lands located at 1160 Harbor Island Drive, San Diego, California, from the Port District under District Document No. 1885 and several Tidelands Use and Occupancy Permits (the "Marine Terminal Railway Facility property").  The leased property was vacant and had not previously been occupied. Thereafter, Lockheed Aircraft Corporation constructed the Marine Terminal Railway Facility, including Building 921, along with the railway and pier that extend into the East Basin.  The Marine Terminal Railway Facility was operated in conjunction with

the adjacent LESC Facility (as defined below), and a paved road joined the two facilities. The Deep Quest, a deep submersible vehicle, and two other deep submersible rescue vehicles, owned by Lockheed Missiles and Space Co. ("LMSC"), were operating out of the facility beginning in 1969. In 1971, the Marine Terminal Railway Facility lease was assigned to LMSC. From 1971 to 2009, the operations and maintenance of LMSC's submersible vehicles were conducted at the facility, included painting, welding, replacing parts, and general maintenance of the submersibles. In 1983, LMSC assigned the lease for the facility to Lockheed Advanced Marine Systems ("LAMS") and, in 1987, the lease was re-assigned to Lockheed Engineering & Sciences Company ("LESC"). Under LESC's operations at the facility, the main activities were prefabrication and testing of shipboard cables and connectors for power and data transfer, and cathodic protection equipment used on oil rigs.

11. Mercury, PCBs and other hazardous substances were used and released at the facility during its operations. During a site inspection by the County of San Diego Department of Health & Human Services, the inspector noted the presence of 2,000 pounds of mercury, used for ballasting and special instruments aboard the submersible vehicles operated at the facility and transported in and out of the water by the railway extending into the water. The mercury was removed and placed in double containers due to a leak discovered on a valve. The releases of mercury and other hazardous substances contaminated the submerged lands covered by the Marine Terminal Railway Facility.

12. In addition to the Marine Terminal Railway Facility leased property, for over thirty consecutive years, Lockheed occupied and operated on adjacent tidelands under numerous Tidelands Use and Occupancy Permits. From December 1984 to November 1987, LAMS operated on an adjacent 3,302 sq. ft. of tidelands. Thereafter, from December 1987 to August 1989, LMSC operated on the property under annual permits. Beginning in August 1989, LESC operated on the property under annual permits and the total area was expanded to 4,102 sq. ft. LESC continued operating on

1  the property until February 1997, when Lockheed Martin Corporation began operating
2  on the property under annual permits.  In 2004, additional property was added to the
3  permits to bring the total to 4,141 sq. ft., and Lockheed Martin Corporation continued
4  operating under annual permits until June 30, 2015, when the term of the last permit
5  expired.

6       13.  Lockheed Martin Corporation is the successor to LAMS, LMSC and
7  Lockheed Aircraft Corporation.

8  *LESC Facility*

9       14.  From 1965 to 1992, Lockheed Aircraft Corporation leased a tract
10 comprising 117,796 acres of tidelands property adjacent to the Marine Terminal
11 Railway Facility from the Port District under District Document No. 1383 ("the LESC
12 Facility").  Lockheed constructed Buildings 901, 922 and 924 on the leased property.
13 The primary use of the LESC Facility was the design and operation of small
14 submersible vehicles in conjunction with the Marine Terminal Railway Facility.
15 Mercury was used as ballasting materials in the submersible vehicles, and the materials
16 were loaded and unloaded at the Marine Terminal Railway Facility.  The mercury was
17 stored in mobile holding tanks equipped with secondary containment trays.  Materials
18 and equipment to support the submersible vehicles were also stored on the property,
19 including lead ingots, petroleum products and support structures for the mercury ballast
20 holding tanks.  The property also housed a laboratory to support ocean mining of
21 manganese nodules.  Harvested manganese nodules were crushed on the property and
22 analyzed for nickel and copper.  The property was also used for storage of waste
23 materials generated from Lockheed's activities and manufacturing operations at other
24 facilities.

25      15.  The area surrounding Buildings 901, 922 and 924 was paved with asphalt
26 and sloped toward three catch basins (CB-1, CB-2 and CB-3) that discharged to outfalls
27 into the East Basin.  Floor drains in the buildings also drained into the catch basins.
28 Mercury, PCBs and other hazardous substances were used and released at the facility

1  during its operations.  The releases of mercury, PCBs and other hazardous substances
2  contaminated the submerged lands covered by the Marine Terminal Railway Facility
3  lease.

4  ### *Lockheed's Failure to Restore the Marine Terminal Railway Facility Property*

5  16.    The term of the Marine Terminal Railway Facility lease expired on June
6  30, 2015.  Thereafter, Lockheed became a holdover tenant under the terms of the lease.

7  17.    Upon termination, the Marine Terminal Railway Facility lease required
8  Lockheed, at the Port District's election, to remove "all installations or improvements
9  and clear the premises of all wreckage, debris, and waste of any kind" and to return the
10  property "in as good condition as said premises were at the date of [the] lease," less
11  ordinary wear and tear and damages beyond the control of Lockheed.  Likewise, the
12  permits required Lockheed to return the land to its predevelopment state, in the same
13  condition it was provided to Lockheed.

14  18.    Beginning on June 15, 2015, and on numerous occasions thereafter, the
15  Port District directed Lockheed to remove all improvements from the leased property
16  and return the property to its predevelopment condition, including removal of the in-
17  water structures and contamination.  It has now been over a year since the Port District
18  directed Lockheed to remove the improvements and restore the property, and Lockheed
19  has failed to remove the improvements, restore the property or submit an acceptable
20  Tenant Project Plan Application for the removal of the improvements and restoration of
21  the property.   The property now appears abandoned, and has become unsightly,
22  overgrown and a nuisance, in violation of the lease.  The in-water improvements and
23  sediment contamination associated with Lockheed's use and operations of the Marine
24  Terminal Railway Facility impair and restrict navigation resulting in a public nuisance,
25  purpresture and trespass on lands held in trust by the Port District.

26  ### *Lockheed's Obligations to Indemnify the Port District*

27  19.    In addition to the requirement that Lockheed remove all improvements and
28  return the property to its predevelopment condition, the lease and permits for the

7

Marine Terminal Railway Facility and the lease for the LESC Facility require Lockheed to indemnify and hold the Port District harmless from claims asserted by the Regional Water Board related to contamination at or released from those facilities.

20. The Marine Terminal Railway Facility lease requires Lockheed to indemnify and hold the Port District harmless from any and all claims resulting from any act or omission of any person on the property or defect, except as to those due to the negligence of the Port District. The permits also require Lockheed to indemnify the Port District from any claims arising out of the use and occupancy of the property subject to the permit. The LESC Facility lease likewise requires Lockheed to indemnify and hold the Port District harmless from any and all claims resulting from any act or omission of any person on the property or defect, except as to those due to the negligence of the Port District.

21. As discussed above, hazardous substances were released by Lockheed during its use and occupancy of the Marine Terminal Railway Facility and LESC Facility resulting in contamination of the submerged portion of the Marine Terminal Railway Facility property. The sediments beneath the railway facility and docks used by Lockheed for mercury ballasted submersibles have some of the highest concentrations of mercury contamination found in San Diego Bay. High concentrations of PCBs, copper and zinc, all used by Lockheed at the facility, are found in the sediments. As a result, the Regional Water Board has indicated that it will soon issue an order to remediation the contaminated sediments of the Marine Terminal Railway Facility.

22. The Port District did not cause or contribute to the releases of hazardous substances from the facility. The lease and permits prohibited such activities and required Lockheed to comply with all laws and regulations. Those releases arose out of Lockheed's use and occupancy of the property. Accordingly, the Port District tendered the claims by the Regional Water Board to Lockheed and has demanded that Lockheed fulfill its contractual obligations.

### *The Port District's Tender and Demand for Indemnification*

23.    On May 16, 2016, the Port District tendered the defense of the Regional Water Board's investigation to Lockheed and requested that Lockheed indemnify the Port District for the costs it has incurred under the terms of the leases and permits discussed above.  Lockheed has refused to meaningfully respond to the Port District's tender.  Because of Lockheed's refusal to fulfill, or commit to fulfilling, its obligations under the leases and permits, the Port District is forced to file this Complaint in order to restore the lands it holds in trust for the people of the state of California.

24.    The Port District has incurred, and continues to incur, reasonable costs to investigate, clean up and abate the waste, including attorneys' fees and expenses.  The Port District is entitled to repayment and reimbursement of all such costs from Defendant Lockheed.

### *Tow Basin Litigation*

25.    Lockheed also leased an adjacent property located at 3380 North Harbor Drive, San Diego California, known as the Tow Basin Facility.  Contamination from the adjacent Tow Basin Facility is subject to a separate lawsuit styled *San Diego Unified Port District v. General Dynamics, et al.*, Cause No. 07CV1955-JAH, in the United States District Court for the Southern District of California (the "Tow Basin Litigation").

26.    The Port District was required the file this separate litigation because of Lockheed's failure to remove the buildings, railway and other improvements on the Marine Terminal Railway Facility property and remove all waste and restore the property to its original condition as required under the lease and permits.  The leased property includes submerged portions of the East Basin where the railway facilities and docks are located, and that property is also contaminated and must be addressed under the terms of the lease and as part of the removal of the in-water improvements.

# FIRST CAUSE OF ACTION

## (Breach of Contract)

27.   The Port District hereby incorporates each of the allegations set forth in paragraphs 1 through 26 as though set forth fully herein.

28.   The Port District leased or provided access to the Marine Terminal Railway Facility under the 1966 lease and numerous Tidelands Use and Occupancy Permits.   The lease required Lockheed, at the Port District's election, to remove "all installations or improvements and clear the premises of all wreckage, debris, and waste of any kind" and to return the property "in as good condition as said premises were at the date of [the] lease," less ordinary wear and tear and damages beyond the control of Lockheed.   Likewise, the permits require Lockheed to return the land in the same condition it was provided, subject to reasonable wear and tear.   The lease and permits also require Lockheed to, among other obligations, maintain the property, comply with all rules, regulations and laws regarding use of the property.

29.   Despite repeated demands from the Port District, Lockheed has failed to remove the improvements and restore the leased property, including the submerged portion of the leased property.   Lockheed's failure to remove the Marine Terminal Railway Facility improvements and restore the property has resulted in the property becoming unsightly, overgrown and a public nuisance, in violation of the lease.

30.   The Marine Terminal Railway Facility lease and the permits constitute enforceable contractual agreements.

31.   The Port District performed all or substantially all of the significant obligations of the lease and permits, or was excused from doing so.

32.   All conditions required for Lockheed's performance of the lease and permits occurred or were excused.

33.   Lockheed is in material breach of its obligations under the lease and permits.

34.   As a result of Lockheed's breaches, the Port District suffered, and continues to suffer, harm.

## SECOND CAUSE OF ACTION

### (Nuisance)

35.   The Port District hereby incorporates each of the allegations set forth in paragraphs 1 through 34 as though set forth fully herein.

36.   The improvements remaining on the Marine Terminal Railway Facility property, including the in-water improvements, constitute a nuisance, public and private, within the meaning of California Civil Code Section 3479 and 3480. The East Basin is used as a marina and is regularly used for public navigation.   The improvements obstruct free use of the property, including the public's use and free passage over portions of the East Basin.

37.   The hazardous substances existing on the submerged portion of the Marine Terminal Railway Facility constitute a nuisance, public and private, within the meaning of California Civil Code Section 3479 and 3480.  The release of hazardous substances are injurious to the public's health, offensive to the senses, and specifically injurious to the Port District in that they contaminate navigable waters and obstruct the Port District's and public's free use, passage and comfortable enjoyment of the submerged lands.

38.   The hazardous substances existing on the submerged portion of the Marine Terminal Railway Facility interfere with the Port District's free use of the East Basin for the promotion of commerce, navigation, fisheries, ecological preservation and habitat restoration.  Further, pollution of water, tidelands, and bays constitutes a public nuisance, and pollution of these resources occurring as a result of a violation of law is a public nuisance *per se*.  Lockheed violated, and continues to violate, among other laws, California Civil Code section 3479 and California Water Code sections 13000, *et seq*.

39.   The hazardous substances existing on the submerged portion of the Marine Terminal Railway Facility property cause inconvenience and annoyance to the people

of the state of California and to the Port District.   The condition created by the contamination affects a substantial number of people who use the Bay for commercial and recreational purposes and interferes with the rights of the public at large to clean and safe resources and environment.  The public nuisance will continue until abated.

40.   At all material times, Lockheed had a duty not to permit or allow the continuance of the nuisance.  Lockheed has breached and continues to breach that duty by allowing hazardous substances to affect the submerged lands of the East Basin.

41.   The Port District did not consent to the release of hazardous substances to the East Basin or to Lockheed's leaving the Marine Terminal Railway Facility improvements in place.

42.   As a direct and proximate result of Lockheed's creation of a nuisance, the Port District and the public have suffered, and will continue to suffer, actual damages and injuries to property requiring abatement and other costs to be determined at trial.

### THIRD CAUSE OF ACTION

### (Trespass)

43.   The Port District hereby incorporates each of the allegations set forth in paragraphs 1 through 42 as though set forth fully herein.

44.   The term of the Marine Terminal Railway Facility lease expired and Lockheed failed to remove the improvements as required by the lease.

45.   Lockheed deposited and failed to remove and remediate hazardous substances at the Marine Terminal Railway Facility, and those actions were substantially certain to, and did, cause the entry of hazardous substances to the Marine Terminal Railway Facility property.

46.   The hazardous substances at the Marine Terminal Railway Facility and the improvements remaining on the Marine Terminal Railway Facility property constitute a trespass.  Lockheed has unlawfully interfered with the Port District's possession of the land.

47.     As a direct and proximate result of the trespass, the Port District has been damaged, including damages which the Port District may sustain in the future due to third party claims.

## FOURTH CAUSE OF ACTION

### (Purpresture)

48.     The Port District hereby incorporates each of the allegations set forth in paragraphs 1 through 47 as though set forth fully herein.

49.     The East Basin is navigable in law and in fact and is continuously used by the public for commercial and recreational navigation.

50.     The Marine Terminal Railway Facility improvements left in place by Lockheed constitute an unauthorized invasion of the rights of the public to navigate the waters and constitute a purpresture.   Furthermore, the presence of contaminants discharged and released by Lockheed into the waters and sediments of the Marine Terminal Railway Facility property constitutes an unauthorized invasion of the rights of the public to navigate the waters submerged public trust lands and constitutes a purpresture.

51.     The presence of contaminants and improvements impairs the navigation of the East Basin, related commercial and recreational uses of the East Basin, and the rights of the entire community to free use and enjoyment of the East Basin.

52.     As a direct and proximate result of Lockheed's creation of an unauthorized invasion and obstruction of the rights of the public to navigational uses of the waters of the East Basin, the Port District and the people of the state of California have suffered, and continue to suffer, interference with public and navigational uses of the East Basin and related property damage that requires the removal of the improvements and investigation and remediation of the contamination.

53.     The Port District as trustee also has the authority to institute a proceeding and hereby seeks to compel an abatement of the purpresture created by Lockheed's

1   improvements at the Marine Terminal Railway Facility and contaminated sediments on

2   the submerged portion of that property.

### FIFTH CAUSE OF ACTION

### (Contractual Indemnity)

5   54.   The Port District hereby incorporates each of the allegations set forth in

6   paragraphs 1 through 53 as though set forth fully herein.

7   55.   The Marine Terminal Railway Facility lease and permits and the LESC

8   Facility lease require Lockheed to indemnify and hold the Port District harmless from

9   any and all claims resulting from or arising out of the use, occupancy or operations on

10  the properties.

11  56.   Releases of hazardous substances at or from the Marine Terminal Railway

12  Facility and the LESC Facility have contaminated the submerged portion of the Marine

13  Terminal Railway Facility property.

14  57.   The Regional Water Board has recently indicated that it will issue an order

15  covering the submerged portion of the Marine Terminal Railway Facility property.

16  58.   The Port District tendered the defense of the Regional Water Board

17  investigation and requested Lockheed indemnify the Port District for the costs it has

18  incurred.  Lockheed has failed to accept the tender.

19  59.   The leases and permits constitute enforceable contractual agreements.

20  60.   The Port District performed all or substantially all of the significant

21  obligations of the lease and permits or was excused from doing so.

22  61.   All conditions required for Lockheed's performance of the indemnity have

23  occurred or were excused.

24  62.   Lockheed is in material breach of its indemnity obligations under the

25  leases and permits.

26  63.   As a result of Lockheed's breaches of its indemnity obligations, the Port

27  District suffered, and continues to suffer, harm.

28

14

## SIXTH CAUSE OF ACTION

### (CERCLA)

64.    The Port District hereby incorporates each of the allegations set forth in paragraphs 1 through 63 as though set forth fully herein.

65.    Lockheed and one or more of its corporate predecessors are "persons," as the term is used in § 107(a) of CERCLA, 42 U.S.C. § 9607(a), and as defined in 101(21) of CERCLA, 42 U.S.C. § 9601(21).

66.    The Marine Terminal Railway Facility, including the submerged portions, is a "facility" as the term is used in § 107(a) of CERCLA, 42 U.S.C. 9607(a), and as defined in § 101(9) of CERCLA, 42 U.S.C § 9601(9).

67.    "Releases" or threatened releases of "hazardous substances" to the environment occurred at and onto the Marine Terminal Railway Facility within the meaning of §§ 101(14) and (22) of CERCLA, 42 U.S.C. §§ 9601(14), (22) during the time Lockheed leased and operated the property.

68.    Hazardous substances were "disposed" of at the Marine Terminal Railway Facility within the meaning of §§ 101(29) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(29) and 9607(a) during the time Lockheed leased and operated the Marine Terminal Railway Facility.

69.    Lockheed is liable under § 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), as a person who operated the Marine Terminal Railway Facility at the time when hazardous substances were disposed.

70.    Lockheed by contract, agreement or otherwise arranged for the disposal, treatment and transport of hazardous substances released from the Marine Terminal Railway Facility and LESC Facility.  By taking intentional steps to dispose of, treat and transport hazardous substances at the Marine Terminal Railway Facility and LESC Facility, Lockheed is an "arranger" under § 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

71.    The Port District has undertaken response actions at the Marine Terminal Railway Facility property, in response to the releases or threatened releases of hazardous substances and has incurred necessary costs of response.

72.    The response costs which the Port District has incurred to date are consistent with the applicable federal Hazardous Substances Pollution Contingency Plan as codified at 40 C.F.R. Part 300 ("NCP").

73.    Pursuant to § 107(a) of CERCLA, 42 U.S.C. § 9607(a), Lockheed is liable to the Port District, in whole or in part, for cost recovery from any necessary costs of response incurred and that could be incurred in the future by the Port District.

## SEVENTH CAUSE OF ACTION

### (Declaratory Judgment Under CERCLA 42 U.S.C. § 9613(g)(2))

74.    The Port District hereby incorporates each of the allegations set forth in paragraphs 1 through 73 as though set forth fully herein.

75.    CERCLA specifies that in any action for recovery of costs under 42 U.S.C. § 9607, "the court shall enter a declaratory judgment on liability for response costs . . . that will be binding on any subsequent action or actions to recover further response costs . . . ." 42 U.S.C. § 9613(g)(2).

76.    The Port District will continue to incur response costs to address the contamination caused by Lockheed's release of hazardous substances to the Marine Terminal Railway Facility.

77.    The Port District is entitled to entry of a declaratory judgment that Lockheed is liable for future response costs incurred by the Port District the extent consistent with the NCP.

## EIGHTH CAUSE OF ACTION

### (Response Costs under Health & Safety Code Sections 25300, *et seq.*)

78.    The Port District hereby incorporates each of the allegations set forth in paragraphs 1 through 77 as though set forth fully herein.

79.     The Port District is a person who has incurred and will incur removal or remedial action costs in accordance with section 25363(e) of the Carpenter-Presley-Tanner Hazardous Substance Account Act, Health & Safety Code Sections 25300, *et seq*. ("CPTA").

80.     Lockheed is a "responsible party" or "liable person" under the CPTA pursuant to Section 25323.5(a) of the CPTA, which defines a person who is liable under the CPTA according to the definition of a "covered person" found in CERCLA, 42 U.S.C. § 9607(a).  Lockheed is a "covered person" within the meaning of CERCLA, and is therefore a responsible party under the CPTA and liable to the Port District for response costs and other damages.

81.     Contaminants that Lockheed disposed of and released into submerged portions of the Marine Terminal Railway Facility constitute substances specifically listed and designated as "hazardous substances" within the meaning of section 25316 of the CPTA.

82.     The submerged portion of the Marine Terminal Railway Facility constitutes a "site" for purposes of CPTA section 25323.9.

83.     As a proximate cause of the hazardous substances released by Lockheed, the Port District has had to incur necessary response costs for which Lockheed is strictly liable pursuant to CPTA section 25363.  All of the costs the Port District has incurred to remove and/or remediate the contamination at the premises have been in accordance with Chapter 6.8 of the CPTA and CERCLA.  Notice of the filing of this action will be given to the director of Toxic Substances Control pursuant to CPTA section 25363.

84.     The Port District seeks contribution and/or indemnity from Lockheed for all response costs under CPTA section 25363, which provides that any person who has incurred removal or remedial action costs may seek contribution or indemnity from any responsible party.

## NINTH CAUSE OF ACTION

### (Declaratory Relief under Health and Safety Code Sections 25300, *et seq.*)

85.    The Port District hereby incorporates each of the allegations set forth in paragraphs 1 through 84 as though set forth fully herein.

86.    Because the extent and magnitude of the contamination at the submerged portion of the Marine Terminal Railway Facility is not fully known at this time and the investigatory and remedial work is ongoing, the Port District will incur future necessary response costs including, but not limited to, any response costs for which the Port District may be held liable to any other party with respect to the alleged release or threatened release of hazardous substances, including, but not limited to, investigatory, remedial and removal expenses, attorneys' fees, costs, and interest.

87.    Pursuant to CPTA section 25363, the Port District is entitled to a declaratory judgment establishing that Lockheed is liable for such response costs for the purposes of this and any subsequent action or actions to recover further response costs including, but not limited to, costs and damages for which the Port District may be held liable to any other party or other regulatory agency with jurisdiction over the property.

## TENTH CAUSE OF ACTION

### (Cost Recovery pursuant to California Water Code Section 13304)

88.    The Port District hereby incorporates each of the allegations set forth in paragraphs 1 through 87 as though set forth fully herein.

89.    Lockheed, through its operations at the Marine Terminal Railway Facility and LESC Facility, discharged waste into the waters over the Marine Terminal Railway Facility property in violation of its NPDES permit, the San Diego Basin Plan and California Water Code § 13304(a)(1).   The discharges of waste by Lockheed also caused a condition of pollution and nuisance.

90.    The Port District is a government agency and has incurred costs in cleaning up the waste, abating the effects of the waste and other remedial actions.

91.     Pursuant to Water Code § 13304(c)(1), Lockheed is liable to the Port District for the costs it has incurred and will incur to clean up and abate the waste discharged by Lockheed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff San Diego Unified Port District prays for judgment as follows:

1)     Issuing a preliminary and permanent injunction ordering Lockheed Martin Corporation and Lockheed Martin Engineering & Sciences Company to comply with the removal and restoration requirements of the Marine Terminal Railway Facility lease and permits.

2)     Issuing a preliminary and permanent injunction ordering Lockheed Martin Corporation and Lockheed Martin Engineering & Sciences Company to abate the nuisance, purpresture and trespass.

3)     Declaring and ordering that Defendants are liable to the Port District for all costs and expenses to remove the improvements from the Marine Terminal Railway Facility and restore the property to its predevelopment condition.

4)     Awarding all past and future costs and expenses to remove the improvements from the Marine Terminal Railway Facility and restore the property to its predevelopment condition;

5)     Awarding all past and future costs, including interest, incurred by the Port District to investigate, remediate, cleanup and abate waste and hazardous substances at the Marine Terminal Railway Facility;

6)     Declaring and ordering that Defendants are obligated to defend, indemnify and hold the Port District harmless from and against any and all claims arising out of the Regional Water Board investigation and enforcement proceedings relating to the Marine Terminal Railway Facility, including, but not limited to, all expenses and costs (including reasonable attorneys' fees and expert fees), in an amount according to proof at trial, pursuant to their respective leases and permits as alleged herein;

7)    Declaring and ordering that Defendants are jointly and severally liable under CERCLA section 107(a) and California law to the Port District for all future costs of response incurred and to be incurred by the Port District in connection with the investigation, remediation, cleanup and abatement of the waste and hazardous substances at Marine Terminal Railway Facility;

8)    Awarding the Port District contribution and/or indemnity from Defendants for all response costs under CPTA section 25363;

9)    Declaring and ordering that the Defendants are jointly and severally liable under the CPTA for all response costs for the purposes of this and any subsequent action or actions to recover further response costs including, but not limited to, costs and damages for which the Port District may be held liable to any other party or other regulatory agency with jurisdiction over the property;

10)    Awarding recovery, pursuant to Water Code § 13304(c)(1), of the Port District's costs it has incurred and will incur to clean up and abate the waste discharged by Lockheed;

11)    Awarding damages, interest, future costs, and attorneys' fees relating to the Port District's investigation, remediation, and maintenance to abate the nuisance, trespass and purpresture at the Marine Terminal Railway Facility;

12)    Awarding damages to compensate for the damage to and loss of use of the public trust lands and resources held in trust by the Port District for the uses set forth in Harb. & Nav. Code App. 1, §§ 4, 87;

13)    Awarding all other actual damages including compensatory, consequential, special, and incidental damages, all in an amount to be proven at the time of trial;

14)    Awarding prejudgment interest, and costs in an amount to be determined at the time of trial;

15)    Awarding the Port District its reasonable costs and expenses of litigation, including reasonable attorneys' fees, expert witness fees, consulting fees, and related expenses as provided by law; and

16)   Awarding such other and further relief as the Court deems just and proper.

Dated: August 11, 2016

Respectfully submitted,

By: /s/ William D. Brown

**BROWN & WINTERS**
William D. Brown, SBN 125468
Wentzelee Botha, SBN 207029
120 Birmingham Drive, Suite 110
Cardiff-by-the-Sea, CA 92007
Telephone: (760) 633-4485

**JACKSON GILMOUR & DOBBS, PC**
William J. Jackson
(Pending Admission Pro Hac Vice)
Texas Bar No. 00784325
Micheal W. Dobbs
(Pending Admission Pro Hac Vice)
Texas Bar No. 24012533
515 Post Oak Blvd., Suite 900
Houston, Texas 77027
Telephone: 713-355-5000

By: /s/ John N. Carter

**SAN DIEGO UNIFIED PORT DISTRICT**
**OFFICE OF THE GENERAL COUNSEL**
Thomas A. Russell, SBN 108607, Gen. Counsel
Ellen F. Gross, SBN 149127, Asst. Gen. Counsel
John N. Carter, SBN 246886, Dep. Gen. Counsel
3165 Pacific Highway
P.O. Box 120488
San Diego, CA 92112-0488

**ATTORNEYS FOR THE SAN DIEGO**
**UNIFIED PORT DISTRICT**

ORIGINAL COMPLAINT OF PLAINTIFF SAN DIEGO UNIFIED PORT DISTRICT